**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| DEBRA K. SLUDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-00725-TWP-DML |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff, Debra K. Sluder ("Ms. Sluder"), requests judicial review of the final decision of

the Commissioner of the Social Security Administrator ("the Commissioner"), denying her

application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the

SSA"). For the following reasons, the Court **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

**A.     Procedural History**

Ms. Sluder filed her application for DIB on December 15, 2009. This claim was initially

denied on February 1, 2010, and upon reconsideration on April 19, 2010. Thereafter, she requested

a hearing on June 28, 2010, and on June 21, 2011, there was a video hearing before Administrative

Law Judge JoAnn L. Anderson ("the ALJ"). Ms. Sluder was represented by counsel at the hearing.

On September 7, 2011, the ALJ denied Ms. Sluder's application, and on December 21, 2011, the

Appeals Council affirmed the ALJ's denial, thus making it the final decision of the Commissioner

for the purposes of judicial review. 20 C.F.R. § 416.1481. On May 1, 2013, Ms. Sluder filed this

appeal requesting judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**B.      Factual and Medical Background**

On her alleged onset date, Ms. Sluder was fifty years old.  (Filing No. 13-2, at ECF p. 60).

Ms. Sluder graduated high school, where she had taken special education classes for English and

Math.  (Filing No. 13-2, at ECF p. 69).  In high school, she underwent a psychological examination

under the care of Calvin B. Workman ("Mr. Workman"), a consulting school psychologist, who

noted improvements in her speech impediment, as well as her academics, despite an IQ score of

68.  (Filing No. 13-8, at ECF p. 2).  Ms. Sluder had previously worked on an assembly line at a

candy store, as both a production leader, a shift leader at Burger King, and a nursing aide at a

nursing home.  (Filing No. 13-6, at ECF pp. 16-19).  From her alleged onset date of December 1,

2008 through September 30, 2009, when she stopped receiving insurance coverage, Ms. Sluder

did not engage in substantial gainful activity.  (Filing No. 13-6, at ECF p. 2).  At the time of her

hearing in June 2010, Ms. Sluder reported that she was 5'5" tall and weighed 190 pounds.

On September 9, 2008, Ms. Sluder sat for a hearing test that revealed she had moderate to

moderately severe hearing loss.  (Filing No. 13-8, at ECF p. 3).  A chest x-ray taken on October

15, 2008 showed no active or acute cardiopulmonary disease, (Filing No. 13-8, at ECF p. 25), and

a subsequent x-ray taken on September 9, 2009, found similarly.  (Filing No. 13-8, at ECF p. 24).

On March 23, 2011, Dr. King G. Yee performed an echocardiographic examination and reported

normal left ventricular systolic function (no sign of systolic dysfunction, or heart failure), (Filing

No. 13-10, at ECF p. 10), while Dr. Agnes M. Kenny, M.D., administered a cardiology stress test

on May 11, 2011.  (Filing No. 13-10, at ECF p. 16).  A left catheterization, selective coronary

angiography, and left ventriculography revealed that Ms. Sluder's heart was normal and any chest

pain she felt was non-cardiac in etiology.  (Filing No. 13-10, at ECF p. 23).

Starting on October 12, 2009, subsequent to her last insured date of September 30, 2009, Ms. Sluder began receiving mental health treatment under the care of Mark Reef ("Nurse Reef"), an individual with a Master of Science in Nursing, at the Four County Counseling Center, which continued until February 12, 2010. (Filing No. 13-8, at ECF p. 66). Prior to meeting with Nurse Reef, however, Ms. Sluder had not received mental health treatment during the period relevant to this case. (*See* Filing Nos. 13-6, 13-7, 13-8, 13-9, 13-10).

On January 29, 2010, Joelle Larsen, Ph.D., opined there was insufficient evidence to make a determination of disability for the period between December 1, 2008 and the claimant's last insured date of September 30, 2009. (Filing No. 13-8, at ECF pp. 44-57). On April 5, 2010, J. Gange, Ph.D., affirmed this opinion. (Filing No. 13-8, at ECF p. 72). Similarly, state agency physician M. Ruiz, M.D., ("Dr. Ruiz") opined on January 30, 2010, that there was insufficient evidence to make any determination before the date last insured of September 30, 2009. (Filing No. 13-8, at ECF p. 58). On April 16, 2010, state agency physician J. V. Corcoran, M.D., affirmed the opinion of Dr. Ruiz. (Filing No. 13-8, at ECF p. 71).

## C.    The ALJ's Decision

The ALJ made the following findings as part of his decision. At step one, the ALJ determined that Ms. Sluder had last met the insured status requirements of the SSA on September 30, 2009, and that she did not engage in substantial gainful activity during the period from her alleged onset date of December 1, 2008 through September 30, 2009. At step two, the ALJ found that Ms. Sluder had the medically determinable impairments of moderate hearing loss and possible attention deficit hyperactivity disorder. The ALJ found, however, the impairment or combination of impairments to not be severe, because they did not significantly limit Ms. Sluder's ability to perform basic work-related activities for twelve consecutive months. The ALJ then concluded that Ms. Sluder was not under a disability from December 1, 2008, the alleged onset date, through

September 30, 2009, the date of last insured, as contemplated in 20 C.F.R. 404.1520(c), and did

not continue to consider the subsequent steps in determining disability.

## II.  DISABILITY STANDARD OF REVIEW

Under the Act, a claimant is entitled to DIB or supplemental security income if the

claimant establishes a disability, defined under 42 U.S.C. § 423(d)(1)(A) as "the inability to engage

in any substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for a continuous period of not less than

twelve months."  Under the authority of the Act, the Social Security Administration has established

a five-step sequential evaluation process for determining whether an individual is disabled.  20

C.F.R. §§ 404.1520 and 416.924.  The steps are followed in order.  If disability status can be

determined at any step in the sequence, the application will not continue to the next step.  *Id.*

At step one, if the claimant is currently engaged in substantial gainful activity ("SGA"),

then the claimant is not found to be disabled, regardless of the severity of his or her physical or

mental impairments, and regardless of age, education and work experience.  20 C.F.R. §§

404.1520(b) and 416.920(b).  If the individual is not engaged in SGA, the analysis proceeds to the

second step.

At step two, if the claimant's medically determinable impairments are not severe, then he

or she is not found to be disabled.  20 C.F.R. § 404.1520(a)(4)(ii).  A "severe" impairment within

the meaning of the regulations is one that "significantly limits an individual's ability to perform

basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.924(c).  An impairment is "not severe"

when medical and other evidence establish only a slight abnormality or a combination of slight

abnormalities that would have no more than a minimal effect on an individual's ability to work.

20 C.F.R. §§ 404.1520(c) and 416.924(c); *see also* SSR 85-28; SSR 96-3p; SSR 96-4p.  If the

4

individual has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, if the claimant's impairments, either singly or in combination, meets or medically equals the criteria for any of the impairments listed in 20 C.F.R. § 404, Supbart P, Appendix 1, and meets the duration requirement, 20 C.F.R. §§ 404.1509 and 416.909, then he or she is found to be disabled.  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, and 416.920(d).  If it does not meet any of the listed impairments, the analysis proceeds to the next step.

Before considering the fourth step, the claimant's residual functional capacity ("RFC") is determined.  20 C.F.R. §§ 404.1520(e) and 416.920(e).  An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. §§ 404.1545 and 416.945.  All of the claimant's impairments, including impairments that are not severe, are considered in finding the RFC.  20 C.F.R. §§ 404.1520(e) and 404.1545; *see also* SSR 96-p.

At step four, if the claimant has the RFC to perform his or her past relevant work, then the claimant is not found to be disabled.  20 C.F.R. §§ 404.1520(f) and 416.920(f).  If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process, if the claimant, given his or her RFC, age, education and work experience, is able to do any other SGA which exists in the national economy, then he or she is not found to be disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g).  Although the claimant continues to have the burden of proving disability at this step, a limited burden is shifted to the Commissioner at this step to prove evidence that demonstrates other work exists in significant numbers in the national economy that the claimant can do.  20

C.F.R. §§ 404.1512(g), 404.1560(c), 416.912(f); *see also Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

The Act provides for judicial review of the Commissioner's denial of benefits. 42 U.S.C. § 405(g). When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become those of the Commissioner. *See Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). The findings of the Commissioner "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The limited role of the Court on judicial review under 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the entire record to support the fact findings or decision of the ALJ, as the trier of facts. This Court must review the entire record, *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992), and sustain the ALJ's findings if it finds "such evidence as a reasonable mind might accept as adequate to support a conclusion," *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Perales*, 402 U.S. 389). Since the Commissioner is responsible for weighing the evidence, resolving conflicts and making independent findings of fact, *see Perales*, 402 U.S. at 399–400, a reviewing court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the Commissioner to decide whether a claimant is or is not disabled, *Powers*, 207 F.3d at 434. A court must affirm the agency's factual findings even if the court believes that substantial evidence would support alternative findings. *Arkansas*, 503 U.S. 91.

Though the ALJ's decision must be "based upon consideration of all the relevant evidence," *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994), it "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th

Cir. 1993). Rather, at the very minimum, the ALJ's discussion must "confront evidence that does not support his conclusion and explain[n] why it was rejected." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). In this manner, the ALJ must provide a path of reasoning, with evidence that leads logically to his conclusion. *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996).

## III. DISCUSSION

Ms. Sluder raises two issues in her appeal. First, she argues that the ALJ erred by failing to call upon a medical expert to "determine when Ms. Sluder's impairments became disabling." (Filing No. 17, at ECF pp. 11-12). Second, she argues that the ALJ did not properly evaluate the record as a whole and ignored the evidence of her obesity and mental retardation/borderline intellectual functioning. (Filing No. 17, at ECF pp. 12-14).

Ms. Sluder's objections are well taken, however, the ALJ reasonably utilized medical expert evidence. Finding no medically determinable impairments as severely limiting, the ALJ need not further determine the onset date through additional medical expert evidence. Likewise, when her discussion considered only the relevant and acceptable medical and school records to be substantial evidence, the ALJ reasonably considered the record.

### A.    The ALJ Reasonably Utilized Medical Expert Evidence to Find Ms. Sluder's Medically Determinable Impairments Not Severely Limiting

The Court finds that substantial evidence supports the ALJ's decision against finding Ms. Sluder's impairments to be "severe" within the meaning of the regulations. *See infra* Part III.B. A severe impairment or combination of impairments is one that significantly limits the claimant's physical or mental ability to perform basic work activities for at least twelve consecutive months. *See* 20 C.F.R. §§ 404.1520(c) and 404.1521(a). The ALJ found that neither of Ms. Sluder's two medically determinable impairments, moderate hearing loss and possible attention deficit hyperactivity disorder, (*see* Filing No. 13-2, at ECF p. 18), affected her in such a manner to limit

7

her ability to perform basic work activities.  (Filing No. 13-2, at ECF p. 22).  The ALJ, in writing her decision, resolved step two to reflect that fact, and provided substantial evidence that logically lead to her conclusion.  *See infra* Part III.B.

Ms. Sluder contends that the ALJ's comment – "a determination can be made but the evidence fails to establish the existence of a severe impairment on or before the date last insured," (Filing No. 13-2, at ECF p. 21) – is a finding that the evidence is inconclusive as to the onset date of a "severe impairment."  (Filing No. 17, at ECF pp. 10-11).  Ms. Sluder then argues that the ALJ did not reasonably utilize medical experts by failing to call upon one to determine the onset of the impairment.  (*Id.* at ECF pp. 11-12).  Both arguments incorrectly assume, however, that the ALJ found the existence of a severe impairment.

From the outset, the ALJ could not have intended such a reading of the comment when she explicitly began the analysis portion of the fourth finding of fact by stating:

> [A]fter considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have been reasonably expected to produce some symptoms; however, *there is no evidence that the effects of these symptoms was of sufficient severity to establish a severe impairment* or combination of impairments on or before the date last insured.

(Filing No. 13-2, at ECF p. 19) (emphasis added).  With this declaration, the ALJ unambiguously states the conclusion that she will later reach: the "evidence fails to establish the existence of a severe impairment."  (Filing No. 13-2, at ECF p. 21).

The subsequent analysis is similarly unambiguous.  Having found the existence of at least one medically determinable impairment, the ALJ then "considered the four broad functional areas set out in the disability regulations," (Filing No. 13-2, at ECF p. 21),  to determine whether they, each or severally, significantly limited Ms. Sluder's physical or mental ability to do basic work activities under 20 C.F.R. § 404.1520(c).  Discussing each functional area individually and with

8

sufficient detail, the ALJ determined that Ms. Sluder's mental impairment "caused no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area," making the impairment "nonsevere." ([Filing No. 13-2, at ECF p. 22](#)); *see* 20 C.F.R. § 404.1520a. Concluding that the "claimant's physical and mental impairments . . . do not significantly limit the claimant's ability to perform basic work activities," the ALJ stated again that "the claimant does not have a severe impairment or combination of impairments." ([Filing No. 13-2, at ECF p. 22](#)).

As such, the Court understands the ALJ's comment – "a determination can be made" – within the greater context of the entire decision. Put plainly, the ALJ meant that the record contained sufficient evidence, in fact, to make a determination that Ms. Sluder *was not disabled*. In a situation where severe impairments *have been found* but the record does not establish conclusively the date or point in time at which they became severe, the Court agrees with Ms. Sluder that the ALJ "should call on the services of a medical advisor" to determine "when onset must be inferred." SSR 83-20.[1] The case before the Court, however, is not one such situation— and does not fall under SSR 83-20.

For these reasons, the ALJ did not err by failing to summon a medical expert to determine the onset of the impairment. *See Schneck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) ("The ALJ did not find that Scheck was disabled, and therefore, there was no need to find an onset date. In short, SSR 83–20 does not apply.") (citations omitted).

Ms. Sluder's brief argument concerning absence of treatment, (s*ee* [Filing No. 17, at p. 11](#) ("[SSR] 96-7p provides that an ALJ must not draw any references . . . from a failure to seek or

---

[1] The Court agrees because, more specifically, SSR 83-20 "addresses situations in which an ALJ finds that a person is disabled as of the date she applied for disability insurance benefits, but it is still necessary to ascertain whether the disability arose prior to an even earlier date—normally, when the claimant was last insured." *Eichstadt v. Astrue*, 534 F.3d 663, 666 (7th Cir. 2008).

pursue medical treatment.") (omission of internal quotation marks)), likewise, is not persuasive.

Further, Ms. Sluder does not explain why additional medical expert opinion is necessary. The ALJ

is not "*required* to order such examinations," but is given the choice to do so "if an applicant's

medical evidence about a claimed impairment is insufficient." *Skinner v. Astrue*, 478 F.3d 836,

844 (7th Cir. 2007) (citing 20 C.F.R. § 416.917). Here, the medical evidence on the record, which

included consultant opinions from the four medical state agency reviewers, was sufficient and,

more importantly, substantial. *See infra* Part III.B; *accord Kendrick v. Shalala*, 998 F.2d 455, 458

(7th Cir. 1993) ("[I]t is always possible to do more. How much evidence to gather is a subject on

which district courts must respect the Secretary's reasoned judgment.").

**B.     The ALJ Did Not Ignore Substantial Evidence and Reasonably Considered the Record as a Whole**

With respect to her next argument, Ms. Sluder argues that the ALJ ignored physical

opinions evincing her obesity, as well as medical opinions about her mental impairment. (Filing

No. 17, at ECF p. 12). In contrast, the Court finds the ALJ's consideration of the record inclusive

of substantial evidence and reasonable.

The record reflects that Ms. Sluder's weight diminished over the relevant time periods.

During an October 5, 2008 examination she weighed 230 pounds (Filing No. 13-8 at EFC p. 17),

by April 2010 her weight was down to 198 pounds (Filing No. 13-8 at EFC p. 75) and at her

hearing in June 2011, she testified that she weighed 190 pounds. In support of her obesity claim,

Ms. Sluder cites *Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000). Like the claimant in *Clifford*, Ms.

Sluder asserts that her obesity was a "relevant impairment that could contribute to the cumulative

effect of her other impairments." (Filing No. 17, at ECF p. 13). The case before the Court,

however, is significantly distinguishable from *Clifford* on the facts. The claimant there suffered

from a combination of impairments that were "significantly related to obesity under Listing

9.09, 20 C.F.R. Part 404, Subpart P, Appendix 1," unlike Ms. Sluder's impairments of moderate hearing loss and possible attention deficit hyperactivity disorder. *Clifford*, 227 F.3d at 873; (*but see* Filing No. 17, at ECF p. 2-8 (listing Ms. Sluder's testimony before the ALJ and relevant medical evidence without mention of relation to obesity)). Since she was unable to demonstrate related impairments, Ms. Sluder must have at the very least "specif[ied] how . . . obesity further impaired [her] ability to work," instead of "speculat[ing] merely that [her] weight makes it more difficult" to perform work-related activities. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

Moreover, the record in *Clifford* contained "numerous references . . . to claimants 'excessive' weight problem," with expert medical opinions explicitly drawing attention to, demonstrating and diagnosing obesity. 227 F.3d at 873. No such medical report or opinion explicitly comments on or makes observations regarding Ms. Sluder's weight—rather, as the Commissioner urges, the issue of Ms. Sluder's weight is only mentioned by way of routine documentation. (*See* Filing No. 13-8, at ECF pp. 12, 13, 14, 15, 17, 38, 75; Filing No. 13-9, at ECF p. 5). State reviewing physicians, as well as other medical sources, were aware of Ms. Sluder's weight, but did not identify it as "significantly aggravating . . . or contributing to her physical impairments." *Prochaska v. Barnhart*, 454 F.3d 731 (7th Cir. 2006). Had the ALJ derived non-existent medical findings from routine documentation, she would be "playing doctor" and reaching "independent medical conclusions." *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009). Therefore, the review of the record's acceptable medical sources and Ms. Sluder's doctors' reports as presented in the record, (Filing No. 13-2, at ECF pp. 19-21), justify the ALJ's consideration of obesity as adequate under SSR 02–1p. *See Prochaska*, 454 F.3d at 736-37 (holding the implicit consideration of obesity through review and discussion of doctors' reports as

analogous to *Skarbeck*, 390 F.3d 500); *Skarbek*, 390 F.3d at 504 ("[A]lthough the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions.").

Regarding her mental impairments, Ms. Sluder offers the opinion of school psychologist, Calvin Workman, who administered an IQ test on April 4, 1974, and of Nurse Reef, in May 2011. (Filing No. 17, at ECF p. 13).  The Court finds that neither entry constitutes substantial evidence that was overlooked by the ALJ.

Mr. Workman's opinion, predating the onset of Ms. Sluder's alleged disability by over thirty years, (*see* Filing No. 13-2, at ECF p. 16), appeared ostensibly in the ALJ's remark that, notwithstanding the "challenges when she was attending school in her youth," Ms. Sluder demonstrated "no evidence of deficits in adaptive functioning during her adult life." (Filing No. 13-2, at ECF p. 20).  The ALJ, need not "evaluate in writing every piece of testimony and evidence submitted," *Carlson*, 999 F.2d at 181.  As allowed, the ALJ afforded lesser import to Mr. Workman's opinion in light of Ms. Sluder's past academic improvement, successful employment, and current activities of daily living. (Filing No. 13-2, at ECF p. 20).  In doing so, the ALJ provided the appropriate path to find Ms. Sluder's adaptive functioning. *Rohan*, 98 F.3d at 971.

The opinion of Nurse Reef, is similarly unpersuasive.  The ALJ chose to afford the opinion no weight, correctly noting that Nurse Reef was not an "acceptable medical source under 20 C.F.R. 416.927(a)(2) and SSR 06-03p," and his treatment was unrelated to the "period relevant to [the] decision."  (Filing No. 13-2, at ECF p. 21).  In contrast to the ostensive urging of Ms. Sluder, the opinion from a registered nurse cannot "establish the existence of a medically determinable impairment . . . [but] may provide insight into the severity of the impairment(s)." SSR 06-03p. Furthermore, Nurse Reef's opinion, even when taken in conjunction with Mr. Workman's, does

not surmount the substantial evidence against the finding of a severe mental impairment—evidence that a reasonable mind might accept as adequate to support the opposite conclusion.

With no substantial evidence of a severe limitation on her ability to perform work-related functions originating from either a physical or mental impairment, the ALJ reasonably considered the record as a whole and wrote an opinion "based upon consideration of all the relevant evidence." *Herron*, 19 F.3d at 333.

## IV.  CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**.


**SO ORDERED.**


Date: 9/3/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana



DISTRIBUTION:

Charles J. Myers
cmyers7943@sbcglobal.net

Thomas E. Keiper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov